50 N.J. Super. 1 (1958)
141 A.2d 124
STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
ANDREW J. McDONALD, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted March 24, 1958.
Decided April 25, 1958.
*2 Before Judges HANEMAN, PRICE and SCHETTINO.
Mr. Lawrence A. Whipple, Deputy Attorney-General, Acting Prosecutor of Hudson County, submitted the cause *3 for plaintiff-respondent (Mr. Frank J.V. Gimino, Deputy Attorney-General, of counsel and on the brief).
Mr. Andrew J. McDonald submitted, pro se.
The opinion of the court was delivered by SCHETTINO, J.A.D.
This case is before us upon an order of the Supreme Court, dated January 27, 1958, remanding appellant's petition to us to consider on the merits the application for leave to appeal from a denial of a motion to vacate a sentence and to determine whether or not in fact two separate offenses were committed on the alleged day by appellant.
On April 6, 1954, appellant pleaded non vult to two accusations (No. 13 and No. 14) of breaking and entering contrary to N.J.S. 2A:94-1, having waived indictment and trial upon the advice of assigned counsel. The appellant subsequently pleaded non vult to three indictments which do not bear upon the subject matter of this application and, in August 1954, he was sentenced upon his pleas to both the indictments and the accusations. On the accusations he received terms of from five to seven years on each accusation to be served concurrently.
Appellant first sought review of his confinement by way of motion to correct illegal sentence, which was denied by the trial court in a written opinion dated May 20, 1955. In December 1955 appellant petitioned for the issuance of a writ of habeas corpus, which was likewise denied by another written opinion by the same judge. Appellant's letter to Chief Justice Vanderbilt refers to two appeals in forma pauperis, the first dated January 7, 1956 to the Appellate Division and the second dated January 13, 1956 to the Supreme Court, which were allegedly denied without opinion but which are nowhere in evidence in the record. It is also alleged that the United States Supreme Court denied certiorari on April 23, 1956, 351 U.S. 914, 76 S.Ct. 706, 100 L.Ed. 1448. Then, on May 22, 1956, the United States District Court also denied appellant's petition for *4 a writ of habeas corpus and on June 8, 1956 that same court denied the issuance of a certificate of probable cause for appeal.
Thereafter it is not entirely clear as to what procedure the petitioner followed, although it appears that he first sent copies of his petition and denial to the Hudson County Habeas Corpus Advisory Committee, which treated them as an application for assignment of counsel. On April 9, 1957 the assignment judge returned defendant's petitions to vacate sentence, and on May 1, 1957 the Appellate Division likewise returned the petitions. Finally, the petitioner sent three copies of his motion to correct the allegedly illegal sentence to the Supreme Court with a letter addressed to the late Chief Justice Vanderbilt. The above referred to order of January 27, 1958 followed.
The first matter which we consider is the factual question as to whether appellant committed two separate offenses on the same day. There can be no doubt that he did. The complaints and warrants of the municipal court indicate that he did. The first complaint stated:
"that Andrew McDonald alias James F. O'Brien residing at 95 West 46th Street, Bayonne, New Jersey, on March 6th 1954, at 2:15 a.m. in Jersey City, Hudson County, New Jersey did with force and arms and felonious intent break and enter into the premises at St. John's Convent, 3042 Hudson Boulevard, Jersey City, N.J. the property of St. John's Roman Catholic Church, 3042 Hudson Boulevard, Jersey City, N.J." (Emphasis added.)
The second complaint stated:
"that Andrew McDonald alias James F. O'Brien residing at 95 West 46th Street, Bayonne, New Jersey, on March 6th, 1954, at 3:00 a.m. in Jersey City, Hudson County New Jersey did with force and arms and felonious intent break and enter the premises at St. Paul's Convent, 20 Greenville Avenue, Jersey City, N.J., the property of St. Paul's Roman Catholic Church, 20 Greenville Avenue, Jersey City, N.J." (Emphasis added.)
In his statement to the police on March 16, 1954 appellant stated he first broke into St. John's Convent and thereafter *5 into St. Paul's Convent. The transcript of his plea to accusations No. 13 and No. 14 shows that he admitted in open court to two separate acts on the same day. At the time appellant appeared for pleading he was represented by a competent and experienced lawyer in the field of criminal law. The stenographic transcript of the proceedings of that day contains the following colloquy between appellant's counsel, the assistant prosecutor and appellant:
"MR. MILLER [appellant's counsel]: I have gone over all of these accusations with the defendant; and with reference to 13 and 14 they are apparently identical as I read them. They allege breaking and entering into the convent building of the Sisters of St. Dominic. Now if the convent building is the building that houses the Sisters of St. Dominic I am ready to take some action in reference to these indictments. Both of them allege the same day and the same place. I can't understand now, [how] that comes about, whether they are repetitious or what.
MR. HORNSTEIN: No. He went in twice on the same day according to his own statement.
MR. MILLER: (to the defendant) Is that so?
THE DEFENDANT: Yes."
Appellant's letter of May 31, 1954 to the Hudson County Prosecutor also admits to two acts of breaking and entering; and finally, both of the county judge's opinions, upon which the federal Judge relied, found as a fact that the appellant had committed two separate acts.
In fact, the only shadow of doubt in the entire record cast upon this factual issue arises from the accusations themselves since they fail to indicate the diverse times and the addresses of the two convents where the defendant committed his two crimes. Furthermore, the accusations failed to specify the diverse names of the two convents and in fact, one accusation was a carbon copy of the other except for the substitution of "ACCUSATION #13" for "ACCUSATION #14." Thus, they both state:
*6
 "Hudson County Court
 Law Division
 Criminal
 THE STATE :
 vs :
 Andrew J. McDonald also :
 known as James F. O'Brien
 ............................. :
 STATE OF NEW JERSEY |
 > SS
 COUNTY OF HUDSON |
Also known as James F. O'Brien HAVING BEEN CHARGED UPON OATH, BEFORE A MAGISTRATE IN THE SAID COUNTY OF HUDSON, WITH THE crime of breaking and entering with intent to steal, in violation of N.J.S. 2A:94-1,
AND HAVING IN WRITING, ADDRESSED TO THE COUNTY PROSECUTOR OF SAID COUNTY, WAIVED INDICTMENT AND TRIAL BY JURY, AND REQUESTED TO BE TRIED UPON SAID CHARGE, AND SAID REQUEST HAVING BEEN DULY REPORTED AND GRANTED:
THE COUNTY PROSECUTOR OF SAID COUNTY OF HUDSON ALLEGES THAT THE SAID Andrew J. McDonald, also known as James F. O'Brien ON six day of March IN THE YEAR OF OUR LORD ONE THOUSAND NINE HUNDRED AND fifty four, WITH FORCE AND ARMS, AT City of Jersey City IN THE COUNTY OF FORESAID, AND WITHIN THE JURISDICTION OF THIS COURT, DID Willfully and maliciously break and enter the dwelling house and convent building of the Sisters of St. Dominic with intent to steal.
CONTRARY TO THE PROVISIONS OF N.J.S. 2A:94-1 AND AGAINST THE PEACE OF THIS STATE, THE GOVERNMENT AND DIGNITY OF THE SAME.
 DATE: April 6th 1954
 A TRUE COPY
 EDWARD J. BARRONE
 CLERK FREDERICK T. LAW
 COUNTY PROSECUTOR"
N.J.S. 2A:94-1 provides:
"Any person who willfully or maliciously breaks and enters, or enters without breaking, any building, structure, room, ship, vessel, car, vehicle or airplane, with intent to kill, kidnap, rob, steal, commit rape, mayhem or battery, is guilty of a high misdemeanor."
*7 In deciding this case we examine each accusation to determine whether or not each accusation  standing alone  is sufficient in law. At the time he pleaded non vult on April 6, 1954, and the time he was sentenced in August 1954, he knew that he was being charged by each accusation with a different entry. The only ambiguity is the lack of specific address of the dwelling house and convent building of the Sisters of St. Dominic. But no such requirement is found in the statute. In each accusation the elements statutorily stated above are contained.
Had defendant been unaware of any fact necessary for his defense, he had other courses available. True, an indictment must allege "the essential facts constituting the offense charged." This ancient rule is expressed in R.R. 3:4-3. See also State v. Solomon, 97 N.J.L. 252, 257 (E. & A. 1921); State v. Torrance, 41 N.J. Super. 445 (App. Div. 1956), certification denied, 23 N.J. 59 (1956). But, in State v. Engels, 32 N.J. Super. 1, 6 (App. Div. 1954) we stated:
"Gradually our courts have recognized that the nicety of language, the former precautious tautology and prolixity which had characterized indictments in the environment existing in the days of the early common law could with substituted safeguards be disregarded in the social experiences of the modern day without any infringement of the right of the accused adequately to be informed of `the nature and cause of the accusation.' Vide, State v. Lefante, 12 N.J. 505 (1953).
Assuredly, it is still absolutely imperative that an indictment allege every essential element of the crime sought to be charged. [Cases cited] Positive also it is that the omission of the allegation of an essential element of the crime cannot be supplied by inference or implication. [Cases cited]"
An indictment must allege facts sufficient to sustain a conviction. State v. Winne, 12 N.J. 152, 178 (1953). Even though the indictment or accusation may allege the essential facts, it may still leave a defendant in need of further information to enable him to prepare his defense, State v. Davis, 6 N.J. Super. 162 (App. Div. 1950); and defendant may then make use of an application for a bill *8 of particulars pursuant to R.R. 3:4-6. This course, appellant here did not pursue. We are convinced that he did not do so because appellant knew at pleading and at sentencing that the charges were two in number and applied to the two separate addresses into which he admittedly entered.
Thus, we come to the other question remanded by the Supreme Court namely:
"* * * the merits [of] the application for leave to appeal * * *."
In this regard our finding of fact that appellant committed two acts of breaking and entering is dispositive. There is no question that the accusations were sufficient. Each accusation acquainted appellant with a crime for which he was being charged. But in view of the fact that appellant committed the two separate acts, neither of which he denied, and admitted that he understood the significance of the two accusations, there is neither a contravention of substantive due process nor of procedural due process. Thus, the purpose of the formal accusations was fulfilled and appellant cannot now avoid the consequences of his crimes by the application of procedural sophistry. In no way was appellant misled.
We do not condone, directly or by inference, the forms and substance of the two accusations which are obviously the work products of one ignorant in law or of one too careless to perform his duties with more particularity.
We conclude that (a) there is no possible merit to the application for leave to appeal and (b) two separate offenses were in fact committed by appellant on the same alleged day.
HANEMAN, J.A.D. (dissenting).
On March 16, 1954 Andrew J. McDonald, also known as John F. O'Brien, was arrested in New York City on warrants from Jersey City and Bayonne, New Jersey. Having waived extradition he was returned to this jurisdiction to answer the charges pending against him.
*9 On March 9, 1954 one Attilio Ciappa, a detective of the Jersey City Police Department, signed a complaint upon which a warrant was issued. That complaint reads, in part, as follows:
"* * * that Andrew McDonald, alias James F. O'Brien residing at 95 West 46th Street, Bayonne, New Jersey, on March 6th 1954, at 2:15 A.M. in Jersey City, Hudson County, New Jersey did with force and arms and felonious intent break and enter into the premises at St. John's Convent, 3042 Hudson Boulevard, Jersey City, N.J. the property of St. John's Roman Catholic Church, 3042 Hudson Boulevard, Jersey City, N.J., against the peace of the State, the government and dignity of the same, and contrary to the Statute R.S. 2A:94-1."
On March 9, 1954 one John Higgins, a detective of the Jersey City Police Department, signed a complaint upon which a warrant was issued. That complaint reads, in part, as follows:
"* * * that Andrew McDonald alias James F. O'Brien residing at 95 West 46th Street, Bayonne, New Jersey, on March 6th 1954, at 3:00 A.M. in Jersey City, Hudson County, New Jersey did with force and arms and felonious intent break and enter the premises at St. Paul's Convent, 20 Greenville Avenue, Jersey City, N.J., the property of St. Paul's Roman Catholic Church, 20 Greenville Avenue, Jersey City, N.J. against the peace of the State, the government and dignity of the same, and contrary to the Statute R.S. 2A:94-1."
On March 16, 1954 defendant made a statement to the Jersey City Police Department, a portion of which reads as follows:
"* * * I was drinking in Bayonne, N.J. at several bars, then I stopped in a few more bars on my way towards Jersey City, N.J. Then I got the idea to break into St. John's Convent, for some money, because I was short of cash. I went up to the back of the convent and parked the car, then I went over and tried several windows and found one open. I went in and looked around downstairs, when I climbed through the window I was in the first floor, then I went up the top of the stairs, and went in the first door at the top of the stairs, that's when the nun got up and ran, and I got all confused and ran the wrong way. So then I ran back down the stairs and out the front door. I then went to *10 my car and drove off. I drove down the Boulevard to Old Bergen Road, to where I saw the St. Paul Church on the corner and I turned right into street, I parked a little down from the Convent there. I got out of the car and went through the gate, then entered the convent through a unlocked window in the front of the convent, I went into the first floor of the convent through the window, I stayed downstairs for a while about five minutes, then I went upstairs and there was a door at the top of these stairs and I tried this door to see if it was locked and it was open, I went into the room it was dark I couldn't see anything and something in white grabbed my arm and swung me around and started screaming, `Sister, Sister' I tried to get out the door and she had a hold of me, I fell to the floor and the nun fell with me. Then I got up and got out into the hallway, and I didn't know which way to go, so I waited a second at the top of the stairs, and then I ran down the stairs, with the nuns chasing me, I ran out the front door I then ran around the back of the convent, and I jumped over the fence and ran around a half a block back to the car. * * *"
Defendant having waived indictment, was charged, on accusation, with the commission of some 21 crimes. Accusations numbered 13 and 14 read as follows:
"[No. 13. The defendant] HAVING BEEN CHARGED UPON OATH, BEFORE A MAGISTRATE IN THE SAID COUNTY OF HUDSON, WITH the crime of breaking and entering with intent to steal, in violation of N.J.S. 2A:94-1,
AND HAVING IN WRITING, ADDRESSED TO THE COUNTY PROSECUTOR OF SAID COUNTY, WAIVED INDICTMENT AND TRIAL BY JURY, AND REQUESTED TO BE TRIED UPON SAID CHARGE, AND SAID REQUEST HAVING BEEN DULY REPORTED AND GRANTED:
THE COUNTY PROSECUTOR OF SAID COUNTY OF HUDSON ALLEGES THAT THE SAID Andrew J. McDonald, also known as James F. O'Brien ON six day of March IN THE YEAR OF OUR LORD ONE THOUSAND NINE HUNDRED AND fifty-four, WITH FORCE AND ARMS, AT City of Jersey City IN THE COUNTY OF [sic] FORESAID, AND WITHIN THE JURISDICTION OF THIS COURT DID willfully and maliciously break and enter the dwelling house and convent building of the Sisters of St. Dominic with intent to steal.
CONTRARY TO THE PROVISIONS OF N.J.S. 2A:94-1 AND AGAINST THE PEACE OF THIS STATE, THE GOVERNMENT AND DIGNITY OF THE SAME."
"[No. 14. The defendant] HAVING BEEN CHARGED UPON OATH, BEFORE A MAGISTRATE IN THE SAID COUNTY OF HUDSON, WITH the crime of breaking and entering with intent to steal, in violation of N.J.S. 2A:94-1
*11 AND HAVING IN WRITING, ADDRESSED TO THE COUNTY PROSECUTOR OF SAID COUNTY, WAIVED INDICTMENT AND TRIAL BY JURY, AND REQUESTED TO BE TRIED UPON SAID CHARGE, AND SAID REQUEST HAVING BEEN DULY REPORTED AND GRANTED.
THE COUNTY PROSECUTOR OF SAID COUNTY OF HUDSON ALLEGES THAT THE SAID Andrew J. McDonald, also known as James F. O'Brien ON six day of March IN THE YEAR OF OUR LORD ONE THOUSAND NINE HUNDRED AND fifty-four, WITH FORCE AND ARMS, AT City of Jersey City IN THE COUNTY OF [sic] FORESAID, AND WITHIN THE JURISDICTION of this court, did willfully and maliciously break and enter the dwelling house and convent building of the Sisters of St. Dominic with intent to steal,
CONTRARY TO THE PROVISIONS OF N.J.S. 2A:94-1 AND AGAINST THE PEACE OF THIS STATE, THE GOVERNMENT AND DIGNITY OF THE SAME."
Abraham Miller, Esq., was assigned as counsel to represent defendant.
On April 6, 1954 defendant appeared in open court, together with assigned counsel, to plead to a number of the accusations, two of which were those numbered 13 and 14. The following colloquy then occurred between Abraham Miller, Esq., and Isadore Hornstein, Assistant County Prosecutor of Hudson County:
"Mr. Miller: * * * I have gone over all of these accusations with the defendant; and with reference to 13 and 14 they are apparently identical as I read them. They allege breaking and entering into the convent building of the Sisters of St. Dominic. Now if the convent building is the building that houses the Sisters of St. Dominic I am ready to take some action in reference to these indictments. Both of them alleged the same day and the same place. I can't understand how that comes about, whether they are repetitious or what.
Mr. Hornstein: No. He went in twice on the same day according to his own statement.
Mr. Miller: (to the defendant) Is that so?
The Defendant: Yes.
Mr. Miller: Now with reference to accusations 13 and 14  and let me ask you this so there is no misunderstanding. The convent building of the Sisters of St. Dominic, where is that building located? What building is referred to, Mr. Hornstein, because there is a St. Dominic's Academy, and St. John's is another building?
Mr. Hornstein: St. Dominic's Academy and St. Dominic's Convent are two different structures.
*12 The Court: Can you describe where this convent is located?
Mr. Hornstein: At this moment I can't.
The Court: You don't have the files here?
Mr. Hornstein: Just a minute. We will look that up. Let us pass to the next one.

* * * * * * * *
The Court: Well, I gather from what you are telling me, Mr. Miller, we are not prepared to do anything definitely with respect to this matter this morning.
Mr. Miller: Except as to the accusations involving the convent in Jersey City.
The Court: Breaking and entering?
Mr. Miller: Yes.

* * * * * * * *
Mr. Miller: * * * With reference to accusation 21, on a charge of receiving a stolen motorcycle, he says he bought the motorcycle in Massachusetts, so nothing can be done on that.
So that just leaves the two accusations, 13 and 14, and with reference to those two accusations the building involved is in Jersey City at St. John's. The defendant, Andrew J. McDonald, also known as James F. O'Brien, desires to waive his right to indictment and trial by jury, and does so in writing, as required by law, and desires to enter a plea as to those.
The Court (to defendant): Do you understand what Mr. Miller says?
The Defendant: Yes, sir.
The Court: I assigned Mr. Miller to advise with you because I don't feel you should plead to these various accusations, which are very serious charges, without the benefit of advice of counsel. Now you have had the benefit of the advice of counsel and as a result of that you are still willing to plead to accusations 13 and 14, are you?
The Defendant: Yes, sir.
The Court: You realize you have the right to be indicted and tried by a jury on those two the same as on every other charge?
The Defendant: Yes, sir.
The Court: Do you wish to waive that right and plead?
The Defendant: Yes, sir.
The Court: How do you wish to plead to them?
The Defendant: Non vult.
Mr. Miller: He says non vult instead of pleading guilty because he said he was intoxicated. I have explained to him that a plea of non vult carries with it no promise from the Court or anyone as to what punishment can be meted out to him. The only thing, he saves the State the costs of a trial; but for all practical purposes he understands a plea of non vult is practically the same as a plea of guilty, except you (addressing the defendant) throw yourself on the mercy of the Court. Is that so?
The Defendant: Yes.
Mr. Miller: I have explained that to you?
The Defendant: Yes.
*13 The Court: All right, let him sign the waiver.
(Waivers signed by the defendant to accusations 13 and 14.)
The Court: In view of these other charges pending against him, I don't see that it will serve any good purpose to sentence him this morning.
Andrew J. McDonald, on accusation number 13, 1953 Term, Second Session, charging you with breaking and entering with intent to steal, after consultation with you and your lawyers a plea of non vult will be entered on your behalf; and on accusation number 14, also charging you with breaking and entering with intent to steal, the same situation exists, and a plea of non vult will be entered on your behalf to accusation number 14."
On April 26, 1954 defendant was sentenced to a term of five to seven years on each of said accusations 13 and 14, the terms to run concurrently.
Defendant then pursued the course of legal proceedings described in the majority opinion.
On January 27, 1958 the following order was entered in our Supreme Court:
"This matter having been duly presented to the Court, it is Ordered that the cause be remanded to the Appellate Division to consider on the merits the application for leave to appeal as an appeal from the denial by Judge Proctor; and to ascertain whether there were in fact two separate offenses committed on the alleged day."
Although vaguely and inartistically stated, the gist of defendant's complaint is that accusations 13 and 14 contain allegations of the commission of crime which are so vague and indefinite as to lead to the conclusion that only one crime was charged and that he pleaded to that one crime. He argues that it therefore follows that only one sentence could and should have been imposed. He admits that the two accusations charge the commission of a single crime to which he pleaded, and that one sentence was proper. State v. Heyer, 89 N.J.L. 187 (E. & A. 1916).
The problem, therefore, is whether there was a proper accusation of the commission of two separate and distinct crimes to which defendant pleaded and whether the imposition of two separate sentences was proper.
*14 The State admits that the accusations are not clear in describing the locus of the alleged breakings and entries, but argues that reference should be made to the complaint, warrant and defendant's written statement in order to ascertain whether defendant was accused of two breakings at one location or two breakings at different locations.
The State further contends that not only reference to these instruments but to the colloquy at the plea as well demonstrate that defendant knew that he had actually committed two separate acts of breaking and entry on the date alleged, and therefore that he should have known that he stood accused of those two crimes.
The State does not allege or argue that there were two breakings and entries into St. John's Convent, but rather that there was one breaking and entry into St. John's Convent and a second into St. Paul's Convent. It asserts that it was intended to charge these two separate acts, at different locations, in the accusations.
Nowhere in either the complaint or in defendant's statement is there any reference to "St. Dominic's Convent." Defendant's signed statement refers to the buildings as "St. John's Convent" and the convent of "St. Paul's Church," without the designation of any street address. The complaints refer to the buildings as "St. John's Convent, 3042 Hudson Boulevard, Jersey City, N.J., the property of St. John's Roman Catholic Church," and "St. Paul's convent, 20 Greenville Avenue, Jersey City, N.J., the property of St. Paul's Roman Catholic Church," respectively. The only places the words "St. Dominic's Convent" appear are in the accusations and the colloquy preceding defendant's plea.
That there was considerable confusion as to the locus of the alleged breaking and entry as charged in accusations Nos. 13 and 14 is self-evident from the record. The judge, prosecutor and defense counsel were uncertain as to whether those accusations were concerned with two separate offenses committed at the same address, or to two separate offenses *15 committed at different addresses. The discussion between the prosecutor and defense counsel leads to the conclusion that they, the court and defendant believed that defendant stood charged with two separate breakings and entries into the same building, i.e., St. John's Convent, on the same day. It is to be noted that the premises were repeatedly referred to in the colloquy as "building"  singular number, and are finally referred to by Mr. Miller, in pleading for defendant, as "the building involved is in Jersey City at St. John's."
The State admits that both accusations are in identical language but seeks to justify the sentences upon the grounds that defendant admitted committing two separate crimes on the same day at two separate places and pleaded guilty to the two accusations, as worded. The State concludes from this premise that it must be presumed that defendant understood that the accusations referred to the breaking and entry at St. John's and St. Paul's convents. That argument is specious for by it the State would ignore entirely the constitutional requisite that a defendant be first indicted before he be held to answer a criminal charge. N.J. Const. 1947, Art. I, par. 8. The State can find no satisfaction in defendant's admission that he broke and entered two separate premises on the same date. The crucial question is, with what did he stand charged and to what did he plead?
The omission from an indictment of an essential element of the crime cannot be supplied by inference or implication. State v. Engels, 32 N.J. Super. 1 (App. Div. 1954).
In State v. Quarto, 31 N.J. Super. 51, 54 (App. Div. 1954), the court said:
"It is elementary that a judgment of conviction resolves the defendant to be guilty only of that with which he is charged in the indictment, and it is fundamental that where the indictment fails to allege an offense against the law, the judgment of conviction of crime is ineffectual and deserves nullification when brought to the attention of the court on appeal. State v. Pisaniello, 88 N.J.L. 262, 265 (E. & A. 1915). It becomes plain error. R.R. 1:5-1; R.R. 2:5." *16 See also State v. Hintenberger, 41 N.J. Super. 597 (App. Div. 1956), certification denied, 23 N.J. 57 (1956); R.R. 3:5-5 (b) (2).
The purpose of an indictment is twofold, i.e., (1) to inform the defendant of the nature of the offense charged against him, so that he may adequately prepare his defense, and (2) to serve as a shield against another indictment for the same offense. State on Complaint of Bruneel v. Bruneel, 14 N.J. 53 (1953); State v. Winne, 12 N.J. 152 (1953); State v. Lefante, 12 N.J. 505 (1953).
If a defendant should be re-indicted for the same crime, he may use the first indictment and his acquittal or conviction thereof to avoid the threat of double jeopardy by virtue of both our Constitution, Art. I, par. 11, and the common law. State v. Lefante, supra; State v. Di Giosia, 3 N.J. 413 (1950).
A defendant may waive indictment by executing a written waiver and be tried on accusation. R.R. 3:4-2. Such an accusation must set out the facts constituting the crime with the same clarity and particularity as an indictment. R.R. 3:4-3. Borough of Hasbrouck Heights v. O'Brien, 26 N.J. Misc. 270 (Spec. Stat. Trib. 1948); People v. Grogan, 260 N.Y. 138, 183 N.E. 273, 86 A.L.R. 1266 (Ct. App. 1932).
Mere technical deficiencies in an indictment not affecting the substance thereof do not constitute reversible error. R.R. 1:5-1(b) reads as follows:
"No judgment given upon any indictment shall be reversed for any imperfection, omission, defect or lack of form, or for any error except such as shall have prejudiced the defendant in maintaining his defenses upon the merits."
Here, however, we are concerned with more than mere form.
R.R. 1:5-1(a) provides that "the court may * * * notice plain errors affecting substantial rights of the defendant, although they were not brought to the attention of the trial court." Our Supreme Court has stated:
*17 "The rule is designed to allow the appellate court to consider plain error, though not brought to the attention of the trial court, when its conscience is shocked, when it is convinced that substantial justice was not done below, and that an unjust, unconscionable result was brought about by the error or errors first raised on appeal."
State v. Picciotti, 12 N.J. 205, 211 (1953). See also State v. Landeros, 32 N.J. Super. 168 (App. Div. 1954), reversed 20 N.J. 69 (1955).
The accusation cannot be pieced out or augmented by either the complaints or the colloquy. These are no substitutes for the fundamental requirements of an accusation. State v. Haber, 132 N.J.L. 507 (Sup. Ct. 1945); People v. Grogan, supra.
In State v. Orecchio, 16 N.J. 125, 129 (1954), the court said:
"The sound administration of criminal justice in our democracy requires that both the end and the means be just. The accused, no matter how abhorrent the offense charged nor how seemingly evident the guilt, is entitled to a fair trial surrounded by the substantive and procedural safeguards which have stood for centuries as bulwarks of liberty in English speaking countries."
See also State v. Wolak, 26 N.J. 464 (decided April 3, 1958).
To paraphrase the above, defendant was here entitled to a strict compliance with the constitutional and common law guarantees regardless of his admitted guilt in having committed two crimes.
Had defendant been indicted for the breaking and entry at St. Paul's Convent subsequent to his plea to accusations Nos. 13 and 14, it is inconceivable that he could successfully have pleaded autrefois convict, since a reference to the accusation would not have sustained such a plea.
In compliance with the order of the Supreme Court, I find that defendant admitted the commission of two crimes.
Under the mandate of the Supreme Court I would also treat this application as an appeal from an order of the trial court denying defendant's motion to vacate an illegal *18 sentence. It has been ordered that we consider that appeal on its merits, and I would take that to mean that this court should finally determine the matter.
I would therefore (1) reverse the order of the trial court denying defendant's motion to vacate an illegal sentence, (2) reverse defendant's conviction of crime under accusation No. 14, and (3) remand the cause to the trial court for the entry of a proper judgment in accordance with this opinion and these conclusions.